Good morning, Your Honor. My name is Catherine Oberer, and I represent Mr. Jasper Lawrence. Good morning, Your Honor. It's Assistant State's Attorney Joseph Alexander on behalf of the people of the State of Illinois. Now, do you want to reserve some time for rebuttal? Yes, Your Honor. Okay. All right. I want to point out that Justice McBride is not here, but she will listen to the tapes, and she will be involved in the decision-making process in this case. Thank you. Okay. All right. Let's proceed. That just records. It's not, you know, it just records what you're saying. It doesn't give any volume to anything. I want you to know that. Great. Thank you. Okay. Proceed. Today I plan to focus on the first two issues in Mr. Jasper Lawrence's brief, which both ask this Court to reverse his conviction. The first reason that this Court should reverse Mr. Lawrence's conviction is because the officer's actions exceeded the scope of a Terry stop, transformed the encounter into an arrest, and police arrested him without probable cause. Well, didn't the officer see a portion of a revolver? He did, Your Honor. And, again, just seeing a portion of a revolver in Illinois after the Illinois Supreme Court's decision in People v. Aguilar is not in and of itself a crime. Therefore, the officers did not have probable cause to transform the encounter into an arrest. Now, in this case … But didn't they have an obligation at that point to do a further investigation? Certainly. That's something that is permitted under Terry, and they're specifically given authority to do that under Supreme Court case law, under the Illinois Code of Criminal Procedure, and under the Illinois Concealed Carry Act. What they cannot … What should the officer have done when he saw the butt of a gun? Well, specifically, Supreme Court case law says that police may give orders that are no more than a minimal additional intrusion on a traffic stop in the Terry context. So the officer could have ordered Mr. Lawrence to, for example, put his hands up. That would have been permissible. Then the Illinois Concealed Carry Act specifically directs officers to ask persons whether or not they possess a gun, and if so, to identify the location of it. But he didn't have to ask them at this point. He saw the gun. Well, he says he believed he saw a gun. He wasn't sure. And, again, specifically, that is a directive from the Illinois legislature in the Concealed Carry Act that they are to ask whether or not it's a gun. If they believed that it was a gun from that point, they certainly could have ordered Mr. Lawrence to get out of the car. Again, that would be a minimal additional intrusion on a traffic stop. Then they could have patted him down and seized the gun simply for the duration of the questioning, for the duration of that temporary further investigation. This is something that's specifically directed for officers to do in the search during temporary questioning provision of the Illinois Criminal Code. And then, finally, the Illinois Concealed Carry Act says that officers may actually require someone in Mr. Lawrence's situation to provide a license for that gun. But what this authority does not do is allow an officer to draw his weapon, confront a passenger during a traffic stop, immediately handcuff them, put them in the squad car, and take them to a police station. Those actions transform the encounter from a terry stop into an arrest, and such type of seizure requires probable cause. Now, again, in Illinois, after people be Aguilar, the view of just simply having a gun is not in and of itself a crime. In this court, the Illinois Appellate Court in the 1st District tells in both Holmes and Horton that seeing a gun after Aguilar is not probable cause even to arrest someone for committing a crime. Now, that's all the police knew about Mr. Lawrence at this point. The only reason they encountered him is because they pulled over a car that he was riding in because the driver of that car just failed to stop when turning right on red. Well, you don't think that when an officer sees a gun or a butt of a gun, that they don't fear for their safety? Well, there's no indication in this record that Mr. Lawrence did anything to suggest that the officers should fear for their safety. Well, just the fact of a butt of a gun, isn't that enough to fear for somebody's safety, considering what's going on in the world today? Well, again, under Aguilar, persons have a Second Amendment right to self-defense to have guns outside of the home. Now, if they just do that, if they just have a concealed gun like Mr. Lawrence had, then that is not a crime. That's not something that allows the officer to actually escalate the encounter into an arrest, which is what occurs under this court's case law once the officer draws the weapon, handcuffs someone, puts them in the back of a squad car, and takes them to the police station. So, again, when looking at that issue, police are certainly, again, allowed to give orders. They're certainly allowed to do questioning under Terry to protect their safety. Well, you don't think it's reasonable for a police officer, when he sees a butt of a gun, not to draw his gun? I mean, doesn't he fear for his safety at that moment? Well, there's nothing in the case law that the state provided, or that I've provided to the courts in this brief, that says that an officer simply fearing for his safety allows him to draw his gun. So in October, what did you want the officer to do at that point? He sees a gun, they're making a traffic stop, what was the officer supposed to do? Again, the officer could have ordered Mr. Lawrence to put his hands up. Therefore, he wouldn't be touching the gun. He could have ordered him out of the car, and he could have patted him down. There was no, and again, seize that gun just for the temporary duration of the questioning to do further investigation. Once the officer has eliminated any threat that he may perceive, he can properly do the questioning under the Illinois Concealed Carry Act. Do you have a gun? Where is it located?  If that doesn't occur, then it becomes an arrest. You talk about case law. Do you have a case that says that that's what an officer should do when he sees the butt of a gun? He shouldn't pull out his own gun? He shouldn't do that to protect himself? He should be like a clay pigeon? That he should pull out his gun? What? I'm sorry, what was your question? My question is, what case law do you have that says that's the way an officer should reasonably act? The case of the Illinois, excuse me, the Illinois Supreme Court Gonzales case, which the state provided, describes what additional minimal intrusions police can do during a Terry encounter. The Surless Court describes, from this court, the First District Appellate Court, describes what actions an officer can take under Terry, and what actions transform the encounter into an arrest. And the Concealed Carry Act specifically says that officers, if they see a gun, they're supposed to ask questions, not immediately escalate the encounter into an arrest. And I would also point out that there is no indication in the record at any of the times that Officer Klimazewski testified. He testified three separate times, and he never said he feared for his safety. That's simply not something that is in the record in this case. Therefore, Mr. Lawrence would argue that the police escalated the encounter and arrested him beyond the scope of a Terry stop, on scene, without probable cause. And therefore, all the fruits of that should be suppressed. The state did argue for the first time on appeal that this did transform into an arrest. They said there was probable cause, and they identified two pieces of evidence, movements and statement. If the court has any questions about that, I would certainly be able to answer why these two pieces of evidence do not transform the encounter into a situation where there's probable cause for an arrest. But if not, again, Mr. Lawrence would ask to suppress all fruits of the arrest without probable cause and reverse his conviction. And the second reason that Mr. Lawrence did ask the court to reverse his conviction is because the trial court coerced his deadlocked jury to reach a guilty verdict. The jury told the trial court that they were deadlocked, and they specifically sought guidance as to what to do about that deadlock. But the trial court did not give them any guidance. Instead, it commanded them to please continue to deliberate. Again, the entire encounter exchange between the jury and the trial court, the juries told the court, we are at nine guilty, three not guilty, what next? They asked for transcripts. The court responded that it would not be able to. Pretty quickly, though, isn't the trial court supposed to encourage them to continue to deliberate? Where has that ever been converted to a coercion? Well, in Prym, the court specifically said that at the Illinois Supreme Court case of Prym. At what point did they send out the note? The jury in this case? Mm-hmm. Three hours after deliberation. That's a minimal amount of time. What was the court supposed to do not to say continue to deliberate? They were certainly allowed to say continue to deliberate, but they were also required to give some sort of non-coercive response. The Prym court specifically says that if jurors purport deadlocked. And the court's response in this case, you believe, was coercive how? The juries and the minority, the three jurors who said that they believed that the verdict should be not guilty, asked for guidance from the court. They said, what do we do next? Quote, what next? And they said, were the three holdouts, what do we do next? The jury said. How would the trial court have any idea that the three who are saying not guilty are the ones asking that question? Well, it's indicative that they need something else to reach for a verdict. But why is it that the jury's all, isn't it the foreman of the jury at that point sending out the note? How do you know who's asking this question? Well, I would believe that the foreman would be speaking to the jurors in the room and know that there's a split. You said it's the three people in the minority that were asking the trial court for direction. Where are you getting that? As part of the jury, yes. So it's the whole 12. It's not the three in the minority saying we're in the minority, we're the holdouts, help us. That's not what occurred here in this over. Well, the split is 9-3, and the prim court specifically requested or expressed concern that there would be minority jurors seeking guidance. The court in Wilcox, when the jury came back and said we're 11-1 at all propositions and the verdict, that there needs to be some sort of guidance for that minority juror in Wilcox. And that's what occurred here? Yes. That needs to be guidance for the three minority jurors. That's what the note said? The note said we are at 9 guilty, 3 not guilty, what next? Or what next? How is that saying talk to the three holdouts? Where are you getting that? I'm so confused right now by your argument. Of course the note came from the entire jury. Of course. It specifically purports that there are nine believing the verdict is guilty, three believing the verdict is not guilty, and that jury as a whole is specifically seeking guidance. What they are charged to do is to deliberate to see if they can reach a verdict. How is that coercive at three hours to say continue to deliberate? How is that coercive? Do you have any case other than those that you just cited that says after three hours of deliberation, they send out a question and the court tells them to continue to deliberate? Where are you getting that that's coercive? The amount of time before the note is not what the court is focused on. The court is focused on the specific question. So we just ignore that? Well, it's not something that the prim court is specifically focused on. It's not something that the Wilcox court is specifically focused on. The time that they did focus on is what the jury does after they receive a response from the trial court. And what the prim court and the Wilcox court has directed this court to consider is whether or not after the jury receives a note from the trial court, how quickly they return that verdict. If they return a verdict quickly after receiving a response from the trial court, that can, under Wilcox, indicate that the response did coerce the jury. So what should the trial court have done? They should have given the jury guidance. Guidance? Yes. You mean given the shotgun instruction? I'm not sure what you mean by that. There's an instruction that we call the shotgun instruction. Is that the prim instruction? That's the instruction to continue to deliberate. The prim court says there are three things. It's a long instruction. It's three paragraphs. But there are three specific things identified in the brief from the prim instruction that would be relevant here. One is that the jurors should decide the case on their individual honest convictions. The second is that each juror must decide the case for themselves. And the third thing is that once they do that, once they decide the case, they are not pursuant to prim, pursuant to the Illinois pattern jury instruction. They are not to surrender that conviction. Why is the defendant prejudiced by the court saying continue to deliberate? Because the jury, again, not to belabor the point, but the jury saw guidance. They asked what next. Prim requires the court to tell them basically that they don't have to reach a verdict, that they're supposed to consider the case themselves. They're supposed to decide the case themselves. When you tell a jury to continue to deliberate, you're not telling them that they have to reach a verdict. You're telling them to continue to deliberate. The prim court says that the court is supposed to tell them that they do not need to surrender. Well, isn't that a discretionary instruction? There's no case that says that you must give that instruction. It is required under prim when the jury seeks guidance as to what to do about deadlock, which is what they did here. And in three hours, you're saying the trial court should have said, you're hopelessly deadlocked, and I'm going to give you additional instructions. It should have given the prim instruction. I don't believe anything in that says hopelessly deadlocked. And in three hours, they should have given the prim instruction. Because they purported deadlocked. The three hours part, I'm not aware of any court that specifically tied. Have you ever done a jury? Excuse me? Have you ever done a jury? No, I have not, Your Honor. When you do one, come back and tell me that three hours is hopelessly deadlocked. Again, the court, again, it's her final time. It specifically looks at the content of the jury's note, whether or not they purport deadlocked. The jury's trial court's instruction coerced them because they returned a verdict within 30 minutes. The problem with your argument is this. If a court would really do that after three hours, you see, then they'd have nothing to do after it's six hours and after it's ten hours, you see. So there has to be a point when you use that prim instruction, and it's usually not after three hours in a criminal case. Well, I would point out. When you get some more experience, you'll find that to be the fact. Your Honor, I would point out that this was a pretty simple case. There was only one issue before the jury. Did Mr. Lawrence possess a gun or did he not? The parties agreed on all the other elements of the offense. They considered that specific question for three hours. The speed of their change after the instruction, the magnitude of the change after the instruction under Wilcox indicated coercion, and Mr. Lawrence would ask this court to reverse his conviction. And if the court has no further questions, I will reserve time for rebuttal. Thank you. Good morning, Your Honor. Assistant State's Attorney, Justice Alexander, on behalf of the people of the State of Illinois. Mr. Alexander, do you think that the police, I know you're going to argue that they didn't exceed the boundaries of Terry. Do you think that this was within the scope of Terry having the defendant get out of the car, placed in handcuffs, placed in the back of the squad car? Absolutely. Terry allows for officers to briefly detain a defendant, an offender. Handcuffed in the back of the squad car? That's correct, Your Honor. Terry allows for that. And when we look at Terry, when we look at the Fourth Amendment, we have to look at it from a point of reasonableness. We have to look at the totality of the circumstances, things known to the officer at the time that the officer had this encounter. And what we know here, and I need to clarify some facts, what we have here is the officers seeing the car commit a traffic violation. The officers pull the car over. They walk up to the car with their flashlights. Their guns were not drawn. The officer looks in the car, and he sees the defendant with a gun in his front sweatshirt pocket. He sees it sufficiently where the officer knows that it's a gun. So this gun is uncased. It's easily accessible. The officer, not knowing this defendant, not knowing anything else but there's a gun, pulls his gun and has the defendant step out of the car. All of that is reasonable. The officer, what counsel is saying is the officers, seeing this gun, needed to ignore the fact that this inherently dangerous weapon, the courts have said that guns are inherently dangerous, ignore the dangerous weapon, ignoring the fact that, ignoring the possibility that defendant at any point can pull this gun out, shoot the officer, injure anyone walking past. Ignore all of that and say, I'm sorry, sir, is that a gun in your pocket? That's not what the Fourth Amendment requires. The officer, the intrusion, as counsel calls it in this case, was minimal. The officer pulled the defendant, asked the defendant to get out of the car after his gun was drawn. The officer took possession of that gun. And when the officer took possession of that gun, defendant says, it's a lighter, it's not a gun. And so at that point, we have probable cause to arrest this defendant. Before that, everything else. Because of the lie? Because of the lie, because of the movements in, I should back up, when the officers, when they were walking towards the car, they noticed the defendant making, looking back repeatedly, doing things with his hands. And so we have, when we're looking at probable cause, we don't need enough evidence to convict at that point. It just has to be whether there's the probability of a crime occurring. And we have that. We don't look at these encounters from the perspective of a legal technician. We look at them from the perspective of a reasonably prudent person. And a reasonably prudent person confronted with an unknown offender, an unknown person with an easily accessible gun, will try to neutralize that dangerous situation. And Terry allows for that. The U.S. Supreme Court case law allows for that. The Illinois Supreme Court case law allows for that. This court's case law allows for that. So everything about this stop was proper under Terry, under the Fourth Amendment. And for those reasons, we're asking that this court affirm the trial court's denial of the defendant's motion to quash arrests and suppress evidence. Do you want to address counsel's argument that the trial court was coercive to the jury? Yes, Your Honor. When we look at coercion, this court has said, this court, the Illinois Supreme Court has said, the trial court's instruction to the jury has to be simple, neutral, and non-coercive. This court repeatedly has found that telling the jury to please continue to deliberate, which is what this court told the jury, is not coercive. In this case, the jury had only been deliberating for three hours. They sent out a note, and counsel repeatedly said that they were deadlocked, they were deadlocked. Nothing in their note said that they were deadlocked. In fact, their note said that they, the note suggested that they wanted to continue to deliberate. Because they said, we're nine to three, what next? Can we get the officer's testimony, transcripts? If they were deadlocked, why would they want the transcripts? And the court had this note recognize correctly that they were not deadlocked. And with defendant, defense counsel's acquiescence, instructed the jury to continue to deliberate. And that acquiescence is important, because defendant cannot now complain that there was an error when defendant had the opportunity to say, your Honor, I want the prim instruction. That didn't happen. And to address their claim of ineffectiveness because I brought up counsel not asking for the prim instruction, again, there was no reason to request the prim instruction, because this jury did not indicate that they were hopelessly deadlocked or deadlocked in general. What counsel was trying to do is elevate this to this Wilcox case, which is completely distinguishable, because in Wilcox, the court's instruction essentially told the jury that they had to reach a verdict. The court talked about being sworn, having to come to a decision. That didn't occur in this case. The jury had only been deliberating for three hours. The fact that they came back 40 minutes after being instructed doesn't suggest that this language was coercive. What it suggests is that they actually did what the trial court asked them to do, which is continue to deliberate. And after further deliberations, found defendant guilty. And based on this record, we ask that this court reject defendant's argument that a prim instruction was required and that the court coerce this jury. And we ask that you affirm his conviction. Thank you. I'm sorry if there are no further questions. Thank you. I just have a couple quick points on the first issue, addressing what type of seizure occurred at the scene of the traffic stop. I believe in the state's brief, they are, in their point heading, they are conceding that there was, in fact, an arrest that occurred on the scene when the officer not only drew his weapon, but handcuffed Mr. Lawrence, put him in the back of the squad car, and then actually took him to the police station. As to the state's arguments that there was probable cause for this arrest, the state claims now that Mr. Lawrence was doing things with his hands. The officer only testified that Mr. Lawrence was moving his hands around a lot. And this court has held that movements and gestures, because they can be innocent, do not establish probable cause. And again, as regards to the statement, there's nothing that says that statement indicates consciousness of guilt, as argued in the briefs, so that also would not raise this type of situation to probable cause that a crime has occurred. And if the court has no further questions, Mr. Lawrence is asked to reverse this conviction. Thank you. Thank you very much. We'll take this case under advisement and the court will be adjourned.